NOT FOR PUBLICATION (Doc. No. 5)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| RICHARD INACIO, | : |
| Plaintiff, | : Civil No. 14-4953 (RBK/AMD) |
| v. | : **OPINION** |
| STATE FARM FIRE AND CASAULTY COMPANY, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion to Dismiss of Defendant State Farm Fire and Casualty Company ("Defendant") (Doc. No. 5) Plaintiff Richard Inacio's ("Plaintiff") Complaint pursuant to Rule 12(b)(6), in which Plaintiff asserts claims of breach of contract, breach of implied covenant of good faith and fair dealing, and violation of the Consumer Fraud Act against Defendant. For the reasons stated herein, Defendant's Motion to Dismiss will be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff owns residential real property located at 4 Jackson Court, Monmouth Beach, Monmouth County, New Jersey. (Compl. ¶ 9.) Plaintiff purchased an insurance policy, Policy Number 30-BB-D805-8 (the "Policy"), from Defendant, which covered the property at issue in

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Accordingly, the following facts are taken from Plaintiffs' Complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

1

this matter and was in full force and effect at all relevant times herein.  (Id. ¶ 11.)  The Policy included insurance coverage for, inter alia, (1) the risk of direct physical loss to the dwelling, including windstorms; (2) the risk of direct physical loss, including windstorms, to Plaintiff's personal property; and (3) loss of use for the risk of direct physical loss, including windstorms. (Id. ¶¶ 13-15.)

On October 22, 2012, Tropical Storm Sandy ("Superstorm Sandy") was formed south of Jamaica.  (Id. ¶ 16.)  On October 29, 2013, and continuing into October 30, 2012, Superstorm Sandy—a windstorm event and a covered risk under the Policy—struck the New Jersey coast. (Id. ¶ 18-19.)  As a result of the winds and rains associated with Superstorm Sandy, Plaintiff's property sustained damage and losses.  (Id. ¶ 21.)  Plaintiff promptly submitted an insurance claim to Defendant for the damage to the property caused by the wind and rain associated with Superstorm Sandy.  (Id. ¶ 22.)

On November 12, 2012, Defendant sent an adjuster to evaluate the damage to Plaintiff's property, which resulted in the payment of $901.29 for damages caused by wind and rain.  (Id. ¶ 24-25.); (Ex. B to Cronin Cert., Nov. 12, 2012, Estimate ("Nov. 12 Est.").)[2]  On December 7, 2012, Defendant sent Plaintiff a letter (the "December 7 letter") stating, in pertinent part:

---

[2] A court may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1191, 1196 (3d Cir. 1993); see also In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting the inquiry is whether the claims in the complaint are "based" on the extrinsic document).  In considering the pending Motion to Dismiss, the Court will consider the insurance Policy, the letters, and the records attached to Defendant's Motion to Dismiss, as well as Plaintiff's Opposition.  Plaintiff's claim arises from Defendant's alleged improper adjustment of the claim.  Specifically, that Defendant "only acknowledged a small position [sic] of the covered damages to the Plaintiff's home," which forced Plaintiff to seek "professional help to determine the amounts owed under the policy, because they disagreed with [Defendant's] estimate, believing it to be to low." (Compl. ¶¶ 25-26.)  The Complaint also alleged that Defendant "failed and refused to promptly or properly adjust the Plaintiff's losses from Superstorm Sandy," and "failed and refused to pay the insurance proceeds required under the Policy."  (Id. ¶¶ 28, 31.)  While Plaintiff's Complaint does not explicitly reference the attached materials, Plaintiff's allegations that Defendant only acknowledged a small portion of the covered damages and that Plaintiff sought professional help to determine the amounts owed rely upon some denial of his insurance benefits having occurred.  For instance, since Plaintiff sought professional help only after receiving the December 7, 2012, letter, the Court finds Plaintiff implicitly incorporated this letter in his Complaint.  The Court has additional support for

> [b]ased upon the results of our discussions, site inspection, and investigation, it was determined that the property damage to your dwelling and contents were caused by flood. Damage resulting from this cause of loss is not covered by your policy. Please refer to the following policy provisions as amended by Endorsement FE3494 Homeowner's Policy Endorsement New Jersey.
>
> [policy provisions omitted]
>
> Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.
>
> This Company does not intend by this letter to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time.
>
> If you have any additional information regarding your claim which has not been previously considered or if you desire any additional explanation regarding this matter please contact me ….

(December 7 letter.)

Upon receiving the December 7 letter, Plaintiff believed Defendant's estimate to be too low and subsequently hired Property Damage Consultants ("PDC") to assist him in seeking additional monies owed. (Compl. ¶ 26; Ex. D to Cronin Cert., PDC Letter of Representation ("PDC letter").) PDC inspected Plaintiff's home around June 2013 and estimated that there was $92,403.07 in damages associated with wind and rain from Superstorm Sandy. (Ex. A to Mathis Cert., PDC July 1, 2013, Estimate ("PDC July 1, 2013 Est.").) After learning that Plaintiff hired PDC, Defendant agreed to re-inspect Plaintiff's property. (See Ex. D to Cronin Cert., PDC Letter of Representation ("PDC letter").) On July 29, 2013, Defendant re-inspected Plaintiff's

---

relying on these materials, as they contain the same policy number and address of the property cited in Plaintiff's Complaint. (Compare (Ex. C to Cronin Cert., December 7, 2012, Letter ("December 7 letter"); with Compl. ¶¶ 9, 11; see Brusco v. Harleysville Ins. Co., No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) ([T]here is no reasonable dispute about [a] letter's authenticity, as it references the identical policy number covering the exact property address referenced in the Complaint.").) Nor do the parties dispute the authenticity of these documents or the Court's reliance upon them. Thus, the Court may properly consider the parties' attached materials because failure to do so might permit the Plaintiff to survive the present Motion to Dismiss simply by failing to attach these documents to his Complaint.

home.  (See Ex. E to Cronin Cert., State Farm August 13, 2013, Letter ("August 13 letter").)  Defendant initially denied any additional coverage for Plaintiff's losses, (id.), but then on August 18, 2013, Defendant sent Plaintiff a letter and a check in the amount of $15,005.37.  (Ex. B to Mathis Cert., State Farm August 18, 2013, Letter ("August 18 letter").)  Plaintiff believed this payment was still insufficient to repair his home.  (Compl. ¶ 26.)

Because Defendant denied Plaintiff's request to resolve the matter through appraisal, on June 13, 2014, Plaintiff filed a Complaint against Defendant in the Monmouth County Superior Court of New Jersey for benefits owed under the insurance Policy.  (Id.)  On August 6, 2014, Defendant removed Plaintiff's action to this Court based on diversity jurisdiction.  (Notice of Removal (Doc. No. 1).)  In his Complaint, Plaintiff alleges breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and violation of the Consumer Fraud Act (Count III).  (Compl.)  Defendant filed the present Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on August 27, 2014, arguing that the action is barred by the applicable statute of limitations.

## II.  LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips, 515 F.3d at 233).  In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.

A statute of limitations defense may be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). The statutory bar must be "apparent on the face of the complaint" in order to form the basis for a dismissal under Rule 12(b)(6). Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

### III.   DISCUSSION

New Jersey has a six-year statute of limitations for contractual actions. N.J. Stat. § 2a:14-1. That six-year statute of limitations ordinarily applies to insurance actions. Breen v. New Jersey Mfrs. Indem. Ins. Co., 105 N.J. Super. 302, 309 (Law Div. 1969), aff'd, 109 N.J. Super. 473 (App. Div. 1970). However, the statute of limitations may be shortened by the terms

of an insurance contract. <u>Gahney v. State Farm Ins. Co.</u>, 56 F. Supp. 2d 491, 495 (D.N.J. 1999) (citing <u>James v. Fed. Ins. Co.</u>, 5 N.J. 21, 24 (1950)). Both parties to the present litigation agree that the contractual one-year statute of limitations found in Plaintiff's insurance policy is binding.

At issue in the instant claim is whether the operation of the "equitable tolling doctrine" allows Plaintiff to bring this suit more than one year after the accrual of his property loss. In this context, the New Jersey Supreme Court has determined that contractual limitation provisions should not run one year uninterrupted from the date of loss, as it would allow the statute of limitations to run while the insurance company investigated the loss. <u>Peloso v. Hartford Ins. Co.</u>, 56 N.J. 514, 521 (1970). There, the Court held that:

> the fair resolution … is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will only have 12 months to institute suit.

<u>Id.</u> Thus, the one-year statute of limitations is tolled from the time the insured gives notice of loss until the time that the insurance company "formally denies coverage." <u>Id.</u>

To determine whether the one-year statute of limitations bars Plaintiff's claim, the Court must determine whether the December 7 letter was, on its face, an unambiguous formal denial so as to continue the running of the statute of limitations.

Defendant argues that Plaintiff failed to commence this action within the time allowed by the one-year statute of limitations. (Def.'s Br. at 6.) Defendant contends that, even under

Plaintiff's "best case tolling scenario," the statute of limitations would only extend to April 19, 2014.[3] Thus, Plaintiff's filing on June 13, 2014 would be fifty-five days late. (Def's Br. at 6.)

In opposition to Defendant's motion, Plaintiff argues that because the December 7 letter (1) lacked any "denial language;" (2) requested additional information from the Plaintiff; and (3) failed to reference the prior covered damage and special circumstances, that the letter was ambiguous and not a clear and unequivocal denial of Plaintiff's claim. (Pl.'s Opp'n at 5-11.) Thus, Plaintiff argues that the statute of limitations was tolled from November 12, 2012 through August 13, 2013 at the earliest,[4] making the filing of the action well within the statute of limitations. (Id.)

To determine whether the one-year statute of limitations bars Plaintiff's claim on a motion to dismiss, the Court must determine whether the December 7 letter was, on its face, an unambiguous formal denial so as to continue the running of the statute of limitations.

In arguing that the December 7 letter was ambiguous, and therefore not a clear and unequivocal denial, Plaintiff relies primarily on Azze v. Hanover Ins. Co., 336 N.J. Super. 630 (App. Div. 2001), cert. denied, 168 N.J. 292 (2001). In Azze, the plaintiffs filed an insurance claim with their homeowner's insurance carrier, Hanover Insurance Company ("Hanover") in August of 1995 after a waterbed burst and caused significant damage to their property. Id. at 635. In September of 1995, Hanover sent the Azze's a letter, stating:

---

[3] The Court need not consider Defendant's "best case tolling" argument, as it notes that if the December 7 letter was a denial, Plaintiff's claims would be barred by the applicable statute of limitations. If, however, the letter were an ambiguous denial, the statute would have been tolled until at least August 13, 2013, which means Plaintiff's original Complaint would be timely.

[4] The Court notes that Plaintiff does not concede that the August 13 letter was a clear and unequivocal denial. However, since the statute of limitations would not bar Plaintiff's action if the period was tolled from December 7, 2012, until August 13, 2013, the Court does not decide whether the August 13 letter constitutes a clear and unequivocal denial.

7

> Since Coverage C-Personal Property is named peril and there are no perils which include the bursting of a waterbed, we will be unable to provide coverage for this portion of the claim.
>
> In specifying these grounds for denial, we do not intend to waive, but rather specifically reserve all our rights under the contract of insurance including, but not limited to, other defenses which may be applicable to your claim. Additionally, we continue to require full and complete compliance with all terms and conditions of the policy.
>
> If you have any questions or further information which may become pertinent, please contact us so we may consider it.
>
> Should you wish to take this matter up with the New Jersey State Insurance Department, you can write them at State of New Jersey Department of Insurance, Division of Enforcement and Consumer Protection, CN 329, Trenton, New Jersey 08625-0329.

Id. at 634. The letter did not mention the one-year statute of limitations or mention that the Azze's could seek an attorney if they were dissatisfied. Id.

More than two-years later, on October 23, 1997, the Azzes filed a complaint seeking enforcement of their insurance coverage under their homeowner's insurance policy. Id. at 635. Hanover filed a motion for summary judgment asserting that the statute of limitations barred the Azze's claim. Id. The motions judge found that the 1995 letter constituted a clear and unequivocal denial of the Azze's claim and granted Hanover's motion. Id.

On appeal, the Azze's argued that their claim was not time barred under equitable tolling principles because Hanover's letter was not a clear and unequivocal denial. Id. at 637. The Superior Court of New Jersey, Appellate Division agreed with the Azze's and found that the letter was ambiguous. Id. at 641. "First, the letter was ambiguous because it refers to the submission of new information. One might reasonably wonder why Hanover would require more information, if coverage has already been unequivocally denied … [a] very rational

8

conclusion would be that the denial is not, in fact, final, but instead represents a preliminary finding that remains open to revision." Id. at 641-42.

Second, the court determined that the suggestion to contact the Department of Insurance ("DOI") "could reasonably lead a person to conclude that contact with DOI was actually a prerequisite to a lawsuit." Id. at 642. Further, the language regarding DOI could lead "the insured to believe such a contact with result in the resolution of the claim, so as to render a lawsuit unnecessary." Id.

Finally, the court found the denial letter was not "sufficiently unequivocal because of the special circumstances that surrounded the claim." Id. At the time the denial letter was sent, the Azzes were negotiating with Hanover on the issue of coverage for their structural damage claim arising from the same waterbed incident. Id. at 642-43. These negotiations went well into 1996. Id. at 643. The court determined that because the two claims "stemmed from the same policy, and because the negotiations regarding a section of that claim were ongoing well after the September 1995 denial letter, a reasonable insured might well believe that the limitations period would not restart until after the structural damage claim was settled." Id. The court concluded that the September 1995 letter was not an unequivocal denial and, therefore, the statute of limitations continued to be tolled from August 1995 through January 1997. Id. Thus, the action was timely filed under equitable tolling principles. Id.

Turning to Plaintiff's claim, the Court finds that Azze is distinguishable in certain ways from the current litigation. Whereas the denial letter in Azze did not state or reference the one-year statute of limitations, the Decemeber 7 letter clearly stated that any "action must be started within one year after the date or loss of damage." (Id.) Second, unlike the letter in Azze, the December 7 letter did not advise Plaintiff to "take this matter up with the New Jersey State

9

Insurance Department" or any other agency.  336 N.J. Super. at 634.  The December 7 letter gave Plaintiff no alternative dispute resolution option, or any outside party Plaintiff could contact if he was unhappy with Defendant's decision.  Thus, unlike the letter in Azze, nothing in the December 7 letter could reasonably lead Plaintiff to conclude that contact with DOI or any other agency was a prerequisite to a lawsuit or would lead to the resolution of the claim.

However, the instant claim is similar to Azze in key respects.  First, the December 7 letter did state, "[i]f you have any additional information regarding your claim which has not been previously considered or if you desire any additional explanation regarding this matter please contact me …."  This statement on its own, however, is not enough to render the letter ambiguous.  Subsequent cases have held denial letters to be unambiguous even where a similar paragraph is included in the denial letter.  See Zaun v. Franklin Ins. Co., No. L–1000–12, 2013 WL 1104777, at *1 (N.J. Super. App. Div. March 19, 2013) (granting summary judgment where the denial letter set out the one-year statute of limitations, despite the provision inviting more information).[5]

Importantly, this claim does involve "special circumstances," which suggest Defendant's December 7 letter was an ambiguous denial at most.  See Azze, 336 N.J. Super. at 642-43.  On November 12, 2012, Defendant sent an adjuster to evaluate the damage to Plaintiff's property, which resulted in the payment of $901.29 for damages caused by wind and rain.  Subsequently, Plaintiff received the December 7 letter, which stated "it was determined that the property damage to your dwelling and contents were caused by flood.  Damage resulting from this cause

---

[5] The court in Zaun was also asked to apply Azze to find the denial language ambiguous, but it declined. Importantly, there the letter contained an explicit denial of the insured's claim, "[Insurer] respectfully denies liability for this claim," followed immediately by a restatement of the one-year limitations period for instituting litigation. Zaun, 2013 WL 1104777, at *1.  Based on the clear denial and the presence of the one-year limitations reminder, the court in Zaun found the denial was unambiguous, despite a paragraph in the denial letter requesting additional submissions if necessary. Id. at *3.

of loss is not covered by your policy." (December 7 letter (emphasis added).) On its face, the letter appears only to refer to the possible flood damage, and it gives no indication as to how much of the overall damage to Plaintiff's dwelling and contents was caused by flood. It makes no reference to the $901.29 previously paid for wind and rain damage. The Court does not find this to be an unambiguous denial of Plaintiff's claim for wind and rain damage. Moreover, Defendant's subsequent inspection of Plaintiff's property in July of 2013, and Defendant's payment of $15,005.37 on August 18, 2013, bolster the Court's conclusion that it is unclear on the face of the Complaint and the attached materials whether the December 7 letter constituted an unambiguous denial.

Finally, there is no unequivocal "denial language" in the December 7 letter. It was not until the August 13 letter that Defendant utilized any clear denial language. The August 13 letter stated, in pertinent part:

> Thank you for allowing me to meet with your public adjuster Craig Drillich on July 29, 2013, when we discussed the damage to your property.
>
> Based upon the results of our discussion, site inspection, and investigation, it was determined your exterior siding shows signs of normal wear and tear.
>
> Damage resulting from this case of loss is not covered by your policy. Please refer to the following policy provisions…
>
> (policy portions omitted)
>
> This denial involves the coverages of this policy only. If you have any additional information you would like us to consider, please forward it to us immediately.

(August 13 letter.) (emphasis added). The sort of denial language present in the August 13 letter is wholly absent from the December 7 letter.

Based on the language in the December 7 letter referring only to flood damage, the lack of a clear denial, and an open-ended request for further information, the Court finds that the

11

December 7 letter was not an unambiguous denial of Plaintiff's insurance claim. Therefore, the Court cannot conclude that Plaintiff's claims are clearly barred by the statute of limitations. Defendant's Motion to Dismiss will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss will be **DENIED**. An appropriate order shall enter today.

Dated:    2/3/2015               　　　　　　　　　　　　 s/ Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge